MITAINE
vs.
FERGUSON.

## MITAINE vs. FERGUSON.

### APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF NEW ORLEANS.

The endorser of a note when sued by the endorsee or holder, has no right to inquire whether the plaintiff, in whom the legal title appears, was the agent or real owner, unles by a fictitious assignment he is about to be deprived of his defence against the true owner.

This is an action by the holder against the payee and endorser of a promissory note, subscribed by one B. F. Chapman, and paraphed *ne varietur*, with a mortgage on a slave named Easter, to secure payment; who was sequestered in this suit.

The defendant admitted his endorsement, but denied his liability to the plaintiff. He specially denied that the plaintiff was the *bona fide* holder of the note.

At the trial, one of the deputy clerks was called as a witness for the defendant, who stated that a man calling himself Jean Baptiste Mitaine came that morning, and told him "that the first suit set for trial was *under* his name, but he had nothing to do with it; and that the endorser had paid him."

The plaintiff produced the act of sale, identifying the note with the act and mortgage on the slave Easter. The cause

was submitted to a jury on the pleadings, and this evidence, <span>EASTERN DIS.</span>
who returned a verdict for the defendant.   The plaintiff made <span>_April, 1841._</span>
an unavailing effort to obtain a new trial and appealed.                    MITAINE
                                                                              *vs.*
                                                                         FERGUSON.
*Roselius,* for the plaintiff and appellant.

*Grivot,* contra.

*Simon, J.* delivered the opinion of the court.

This suit is brought by the endorsee of a promissory note
of hand against the first endorser thereof.   The defendant ad-
mitted his endorsement, pleaded the general issue and denied
specially that the plaintiff was the legal and *bona fide* holder of
the note sued on.   The case was tried by a jury who found a
verdict in favor of the defendant, and the plaintiff appealed.

The evidence shows that the note was given in consideration
of a part of the price of a female slave, and that the same
was endorsed by the defendant at the time of the purchase
thereof by one Chapman from one Platet, by whose endorse-
ment, said note, paraphed Ne Varietur, was transferred to the
plaintiff.   Proof has also been adduced that due notice of the
dishonor of the note was given to the endorser, and that the
plaintiff's name was on the back of said note at the time of its
protest.

During the progress of the suit, plaintiff amended his peti-
tion and issued a writ of sequestration, by virtue of which, the
slave having been found in the defendant's possession, was
taken by the sheriff in his custody ; and after the return of the
writ, defendant was allowed to bond the property as his own.

On the trial of the cause, defendant introduced a witness
who testified that " a man calling himself Jean Baptiste Mi-
taine came to him this morning, and told him that the first suit
set for trial to day was under his name, but that he had noth-
ing to do with it, and that the endorser had paid him."   No
plea of payment however is set up in the defendant's answer,
who, on the contrary, limits his defence to the plea that the
plaintiff is not the *bona fide* holder of the note. -

EASTERN DIS.
April, 1841.

MITAINE
vs.
FERGUSON.

The endorser of a note when sued by the endorsee or holder has no right to inquire whether the plaintiff, in whom the legal title appears, was the agent or real owner, unless by a fictitious assignment he is about to be deprived of his defence against the true owner.

We are at a loss to conceive on what grounds the jury may have based their verdict:—It is perfectly clear that the defendant had no right to inquire whether the plaintiff, in whom the legal title to the note sued on, appeared to be vested, was the agent or the real owner of it, unless, by a fictitious assignment; it was attempted to deprive him of substantial grounds of defence which he may have had against the true owner; nothing however is set up in the answer which has any tendency to show that the defendant has any equitable defence to oppose to the payment of the note, and it is certainly immaterial to him whether the plaintiff recovers for his individual benefit or as the agent of another; as the judgment here will have the effect of *Res Judicata* against any one who might hereafter claim an interest in the note. 3 *Martin N. S.* 291, 392.—5 *La. Rep.* 48.

It is however contended that there is proof that the amount sued for has, from the declarations of the plaintiff, been paid to him by the endorser:—The evidence of this fact appears to us to be very loose and indefinite; the endorser alluded to cannot be the defendant who, as we have already said, has not set up any plea of payment; and it is difficult to believe that if he had really discharged the obligation, he would not have availed himself of this defence, instead of relying solely upon an -exception which seems inconsistent with his actual pretensions; indeed, the allegation that the plaintiff is not the true owner of the note, takes away any idea that the defendant would ever have paid him its amount. The vague declarations of the plaintiff that he had nothing to do with the note and that the endorser had paid him, cannot be construed in any other manner but as meaning that he was acting as the agent of his previous endorser (Platet) by whom he had been paid; and if so, the defendant, who, in the absence of any valid defence, must pay it to the apparent legal holder, has nothing to do with this matter.—We think that the verdict of the jury is manifestly erroneous, and our judgment must be in favor of the plaintiff.

It is therefore ordered, adjudged and decreed that the judgment of the Parish Court, be annulled, avoided and reversed, and proceeding to render such judgment as, in our opinion, ought to have been rendered in the lower court; it is ordered, adjudged and decreed that the plaintiff do recover of the defendant the sum of five hundred and ninety-five dollars, and four dollars costs of protest, with five per cent. interest per annum on the said sum from the 14th of February, 1838, until paid; with costs in both courts. And it is further ordered, adjudged and decreed that the female slave *Easter*, specially mortgaged to secure the plaintiff's demand, and heretofore sequestered in this suit, be seized and sold to satisfy the present judgment in principal, interest and costs.